RAMIN R. YOUNESSI, ESQ.: (SBN 175020)
ryounessi@younessilaw.com
HEATHER N. PHILLIPS, ESQ. (SBN 258638)
hphillips@younessilaw.com
SAMANTHA L. ORTIZ, ESQ (SBN 312503)
sortiz@younessilaw.com
DIANA KARAPETYAN, ESQ. (SBN 341633)
dkarapetyan@younessilaw.com
LAW OFFICES OF RAMIN R. YOUNESSI,
A PROFESSIONAL LAW CORPORATION
3435 Wilshire Boulevard, Suite 2200
Los Angeles, CA 90010
Tel: (213) 480-6200
Fax: (213) 480-6201

Attorneys for Plaintiff
HECTOR JR GONZALEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

HECTOR JR GONZALEZ, an individual,

Plaintiff,

v.

THE ELEVANCE HEALTH COMPANIES, INC., an Indiana corporation; and DOES 1 through 20, inclusive,

Defendants.

Case No. 2:25-cv-10297-FLA (PDx)

*Assigned to the Honorable Fernando L. Aenlle-Rocha and Magistrate Judge Patricia Donahue*

**NOTICE OF MOTION AND MOTION OF PLAINTIFF TO COMPEL ARBITRATION AND TO STAY THIS ACTION**

[Filed concurrently with the Declarations of Diana Karapetyan and Samantha L. Ortiz]

**DATE:** January 23, 2026
**TIME:** 1: 30 p.m.
**CTRM:** 6B, 6th Floor

Complaint filed: August 15, 2025
Removal Date: October 27, 2025
FAC filed: November 14, 2025

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on January 23, 2026 at 1:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 6B of the First Street United States Courthouse of the United States District Court for the Central District of California,

i

NOTICE OF MOTION AND MOTION OF PLAINTIFF TO COMPEL ARBITRATION AND STAY THIS ACTION

located at 350 W. 1st Street, Courtroom 6B, 6th Floor,  Los Angeles, California 90012, Plaintiff Hector Jr Gonzalez  ("Plaintiff" herein) will and hereby does move the Court for an order to compel Defendant The Elevance Health  Companies, Inc. ("Defendant") to arbitration and stay the proceedings. This motion is made on the grounds that Plaintiff and Defendant entered into a valid and enforceable arbitration agreement related to Plaintiff's employment with Defendant, which governs the claims in this case.

Pursuant to Local Rule 7-3, this motion is made following meet and confer efforts between counsel for the parties, which took place by written correspondence from October 31, 2025 through November 20, 2025, and a subsequent phone communication on November 26, 2025. (*See* Declaration of Samantha L. Ortiz, at ¶¶s 2-8, and Declaration of Diana Karapetyan, at ¶¶s 4-12; Exhs. B-D attached thereto, filed under separate cover concurrently herewith)

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declarations of Samantha L. Ortiz and Diana Karapetyan with the attached exhibits, all served and filed herewith; any matters which this court may judicially notice; and upon such further oral and documentary evidence as may be presented at the hearing on said motion.

Respectfully submitted,

DATED: December 24, 2025

**LAW OFFICES OF RAMIN R. YOUNESSI,
A PROFESSIONAL LAW CORPORATION**

By:  */s/ Diana Karapetyan*
Ramin R. Younessi, Esq.
Heather N. Phillips, Esq.
Samantha L. Ortiz, Esq.
Diana Karapetyan, Esq.
Attorneys for Plaintiff,
HECTOR JR GONZALEZ

NOTICE OF MOTION AND MOTION OF PLAINTIFF TO COMPEL ARBITRATION
AND STAY THIS ACTION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This action arises out of Plaintiff Hector Jr. Gonzalez's ("Plaintiff" or "Mr. Gonzalez") employment with Defendant The Elevance Health Companies ("Elevance" or "Defendant"). On September 12, 2012, Plaintiff electronically signed the Policy Acknowledgment Statement, in which he acknowledged reviewing and agreeing to Defendant's policies and procedures, including the Arbitration Policy. On September 17, 2012, Plaintiff further signed his offer letter with Defendant, in which Plaintiff agreed that "[he] will be subject to the Company's binding arbitration policy, as more fully described on My HR, HR Policies, Arbitration."

After Defendant removed the action to federal court and produced Plaintiff's arbitration-related documents, Plaintiff acted in good faith by intending to stipulate to arbitration, as the parties acknowledged that a valid and enforceable arbitration agreement existed. However, despite this agreement, Defendant has refused to submit Plaintiff's claims to binding arbitration and instead continues to pursue a ruling from the federal court on its pending Motion to Dismiss the First Amended Complaint ("Motion to Dismiss"). In fact, Defendant has admitted to pursuing this course of action to merely save on litigation costs by improperly using this court's finite resources. By seeking a federal court ruling instead of honoring the agreed upon arbitration process, Defendant is in clear breach of the arbitration agreement.

There is no basis for invalidating Plaintiff's agreement to arbitrate with Elevance. As set forth below, the Arbitration Agreement is valid, enforceable, and encompasses all the claims in Plaintiff's First Amended Complaint. Plaintiff respectfully requests the enforcement of the arbitration agreement by an order: (1) compelling Plaintiff to arbitrate his claims against Elevance in accordance with the terms of the arbitration agreement; (2) stay the action pending the completion and/or resolution of the arbitration; and (3) deeming Defendant's Motion to Dismiss moot.

NOTICE OF MOTION AND MOTION OF PLAINTIFF TO COMPEL ARBITRATION AND STAY THIS ACTION

## II.    FACTUAL BACKGROUND

### A. Defendant and Plaintiff Agreed to Resolve All Disputes Arising Out of Plaintiff's Employment Through Binding Arbitration

On August 15, 2025, Plaintiff filed a state court action alleging claims of discrimination and retaliation in violation of the Fair Employment and Housing Act ("FEHA"), failure to prevent discrimination and retaliation in violation of the FEHA, failure to provide reasonable accommodation and engage in a good faith interactive process in violation of the FEHA, for declaratory judgment, and wrongful termination in violation of public policy. ("State Action").

On October 27, 2025, Defendant removed the State Action to federal court and filed a Motion to Dismiss the Complaint. During this time, Plaintiff inquired and requested arbitration documents between the parties. (Declaration of Diana Karapetyam, "Karapetyan Decl." ¶¶ 3-4.) On November 4, 2025, Defendant produced Plaintiff's Offer Letter, Plaintiff's Policy Acknowledgement Statement, and a copy of Defendant's Arbitration Policy ("Arbitration Agreement"). (Karapetyan Decl. ¶ 5.) Along with the production of the foregoing documents, counsel for Defendant stated as follows on November 4, 2025:

> "With regards to your request for documents evidencing Plaintiff's agreement to arbitrate the claims alleged in the Complaint, please find the following documents:
>
> - Plaintiff's signed September 12, 2012 offer letter, in which he agreed that "as an associate of [Elevance Health], you will be subject to the Company's binding arbitration policy, as more fully described on My HR, HR Policies, Arbitration"; and
>
> - A signed Policy Acknowledgment Statement, acknowledging that: (1) he read the documents available to her in Elevance Health's new hire portal, which included its Arbitration Policy; (2) understood that he was responsible for abiding by the listed policies and procedures; and (3) understood that he may direct any questions about the policies to her manager or to Human Resources.
>
> Additionally, Plaintiff acknowledged the Arbitration Policy during his annual trainings. Plaintiff acknowledged that "[c]ompliance with Elevance Health policies

is a condition of employment," and that he had "access to Human Resources policies via the Elevance Health intranet site and understand that I am responsible for reading and abiding by the policies and procedures listed therein and as amended from time to time." We are working to gather Plaintiff's annual acknowledgments, and we will provide these when we can.

Finally, attached is a copy of Elevance Health's Arbitration Policy in effect when the company terminated Mr. Gonzalez's employment for call avoidance.

At this juncture, we intend to pursue a ruling on our pending motion to dismiss the Complaint, which case law confirms does not constitute a waiver of any agreement to arbitrate."

(Karapetyan Decl. ¶ 5.)  The Arbitration Agreement in pertinent part states "[b]y entering into the employment relationship, *the company, and its associates subject to the policy consent* to the resolution by binding arbitration of all claims except those expressly excluded under the policy." (emphasis added.) Defendant and Plaintiff are subject to and bound by the terms of the Arbitration Agreement.

## B. <u>Plaintiff's Claims in this Action Arise Out of His Employment</u>

The Arbitration Agreement entered into by the parties, provides in pertinent part that "The company's policy is to resolve all legal disputes *arising from or relating to an associate's employment* (including, but not limited to, the termination of employment) through binding arbitration." (emphasis added)(Karapetyan Decl. ¶ 5, Exh. A). Plaintiff's lawsuit, and each and every cause of action therein, is based entirely on his employment with Elevance. Specifically, Plaintiff alleges that Defendant violated various provisions of the FEHA with respect to his employment. As such, it is undisputed that every alleged wrongful act asserted against Elevance in Plaintiff's Complaint arises directly out of Plaintiff's employment with Elevance.

## C. <u>Defendant Does Not Contest Enforceability of the Arbitration Agreement and Improperly Seeks the Court's Ruling on Its Motion to Dismiss</u>

This motion is made following attempts by Plaintiff's counsel to meet and confer with Defendant's counsel, pursuant to Local Rule 7-3, as to whether Defendant would stipulate to arbitration. As of the date of this filing, Defendant does not dispute the enforceability of the Arbitration Agreement, and is in fact willing to stipulate to

-3-

arbitration, however on the condition that the federal court makes a ruling on the Defendant's Motion to Dismiss before arbitration is commenced.

Following the production of the Arbitration Agreement on November 4, 2025, Plaintiff was under the impression that Defendant intended to stipulate to arbitration, but nevertheless wanted a ruling on its Motion to Dismiss. (Karapetyan Decl. ¶ 7.) On November 14, 2025, Plaintiff filed a First Amended Complaint wherein Plaintiff alleged "The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), except that Plaintiff was recently provided with a copy of an Arbitration Agreement that the parties have now agreed is enforceable and the parties intend to stipulate to initiate Arbitration. Plaintiff files this First Amended Complaint in an abundance of caution given the current deadlines for Defendant's filed Motion to Dismiss Pursuant to FRCP section 12(b)(6) and Defendant's insistence that it remain on calendar until a stipulation to Arbitration can be filed with this Court." (Karapetyan Decl. ¶ 8.)

Following the filing of the First Amended Complaint, Defendant asserted that the parties had never discussed a stipulation to arbitrate and contended that Plaintiff had inaccurately characterized the parties' communications in the amended pleading. (Karapetyan Decl. ¶ 8.) The parties subsequently communicated in an attempt to resolve the misunderstandings concerning a stipulation to arbitration. (Id.) On November 17, 2025, Counsel for Defendant stated in relevant part to counsel for Plaintiff:

> "My client will stipulate to arbitration, but Elevance Health's motion to dismiss the FAC should be ruled on by the federal court before arbitration is commenced. Why should Elevance Health have to pay a significant arbitration admin/filing fee and pay an arbitrator thousands of dollars to rule on its motion, when case law is clear that filing an initial dispositive motion is not an act inconsistent with a right to arbitrate? The claims should be thinned out before arbitration, assuming any of the claims alleged in the FAC survive a motion to dismiss.
>
> **If Plaintiff is agreeable to a stipulation that includes the federal court ruling on Elevance Health's anticipated motion to dismiss the FAC before arbitration is commenced, then we are happy to send a draft stipulation for your review and input**. As Plaintiff already noted in his FAC that the arbitration agreement is "enforceable," this proposal should be agreeable to avoid unnecessary arbitration fees."

-4-

1  (emphasis added)(Karapetyan Decl. ¶¶ 9-10, Exh. C.) It is clear based on the foregoing

2  that Defendant is not disputing the enforceability of the Arbitration Agreement, rather is

3  only seeking a threshold pleading ruling from the federal court to save on costs. Put in

4  simpler terms, Defendant is forum shopping. During this time, Defendant continued to

5  insist on meeting and conferring regarding perceived deficiencies in the pleadings and

6  expressed an intent to file a renewed motion to dismiss. (Karapetyan Decl. ¶ 10.)

7  Plaintiff, however, disagreed as to the proper forum for resolving Defendant's asserted

8  issues, taking the position that, in light of the Arbitration Agreement, such issues raised

9  by the Defendant were for the arbitrator, not the Court, to decide. Especially, when the

10  parties were in agreement that the Arbitration Agreement was enforceable.

11      Despite this disagreement, the parties conducted a meet and confer regarding the

12  amended complaint and Plaintiff's intent to file a motion to compel arbitration, and on

13  November 26, 2025, Defendant filed a Motion to Dismiss Plaintiff's First Amended

14  Complaint. (Karapetyan Decl. ¶ 11.)(Ortiz Decl., ¶¶ 2-8). Plaintiff now moves to compel

15  arbitration pursuant to the Arbitration Agreement, as the parties' dispute including the

16  issues raised in Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, fall

17  squarely within the scope of that Arbitration Agreement. (Karapetyan Decl. ¶ 12.)

18  **III.   LEGAL ARGUMENT**

19      **A.   The FAA Requires the Arbitration of Plaintiff's Claims.**

20      With the enactment of the FAA, 9 U.S.C. § 1, *et seq.*, "Congress declared a

21  national policy favoring arbitration and withdrew the power of the States to require a

22  judicial forum for the resolution of claims which the contracting parties agreed to resolve

23  by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). The FAA creates a

24  general presumption in favor of arbitration and requires the enforcement of a written

25  agreement to arbitrate. 9 U.S.C. § 2; *see also, AT&T Mobility LLC v Concepcion*, 563

26  U.S. 333, 334 (2011). Section 2 of the FAA states that a written arbitration provision

27  "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

28  equity for the revocation of any contract." 9 U.S.C. § 2; *Pinnacle Museum Tower Assn. v.*

-5-

*Pinnacle Mkt. Devel. (US), LLC*, 55 Cal. 4th 223, 234-45 (2012). Section 3 of the FAA
requires courts, at a party's request, to stay litigation of arbitral claims pending arbitration
of those claims "in accordance with the terms of the agreement." 9 U.S.C. § 3.

As the Supreme Court noted in *AT&T Mobility*, it is "beyond dispute that the FAA
was designed to promote arbitration." *AT&T Mobility LLC*, 563 U.S. at 345.  Indeed, the
"central purpose" of the FAA is to "ensure that private agreements to arbitrate are
enforced according to their terms." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514
U.S. 52, 53-54 (1995) (internal quotations and citations omitted); *see also Perry*, 482
U.S. at 490 (stating that under FAA, arbitration agreements must be "rigorously
enforced"). Notably, the burden is on the party opposing arbitration to proffer evidence
demonstrating such an agreement is invalid. *See Green Tree Fin. Corp. v. Randolph*, 531
U.S. 79, 91-92 (2000).

### 1. FAA Governs the Arbitration Agreement Entered Into by the Parties

Not only does the FAA apply generally to "all employment contracts" (*Circuit
City Stores v. Adams,* 532 U.S. 105, 111-19 (2001)), but in this case the Arbitration
Agreement further expressly states that "Except as provided in this policy, the Federal
Arbitration Act ("FAA") shall govern the interpretation and enforcement of, and all
proceedings under this policy. The company and associate intend the following to be
binding recitals of facts: The FAA governs this policy…." (Karapetyan Decl. ¶ 5, Exh.
A.) The FAA "creates a body of federal substantive law establishing and regulating the
duty to honor an agreement to arbitrate." *Moses H. Cone Mem. Hosp. v. Mercury Constr.
Corp.*, 460 U.S. 1, 25, fn. 32 (1983). Accordingly, the only relevant issues in connection
with this motion to compel arbitration are: (1) "whether the parties are bound by a given
arbitration clause;" and (2) "whether an arbitration clause in a concededly binding
contract applies to a particular type of controversy." *Howsam v. Dean Witter Reynolds,
Inc.*, 537 U.S. 79, 83-85 (2002).

Moreover, the FAA applies to an arbitration agreement when the agreement
"evidenc[es] a transaction involving commerce." 9 U.S.C. § 2. The term "involving

NOTICE OF MOTION AND MOTION OF PLAINTIFF TO COMPEL ARBITRATION
AND STAY THIS ACTION

commerce" is interpreted broadly, so that any arbitration agreement affecting commerce in any way is governed by the FAA. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995) ("involving commerce" should be read as broadly as possible). The FAA's reach is expansive and coincides "with that of the Commerce Clause." *Id*. at 274. As a result, the Supreme Court and California courts have found that as long as a company purchases out of state materials and/or engages in any interstate commerce, the FAA preempts state law. *See, e.g., id.* at 282 (using materials created outside the state to complete a project negotiated and completely performed within that state is sufficient to evidence interstate commerce); *Basura v. U.S. Home Corp.*, 98 Cal. App. 4th 1205, 1214 (2002) (engaging "in marketing and advertising activities throughout the country using interstate media" is sufficient to demonstrate the FAA applied).) Here, Elevance is an Indiana corporation with its principal place of business in Indiana, where the company performs the vast majority of its executive and administrative functions at its corporate headquarters. (Declaration of Jeremy Deenik In Support of Notice of Removal, ECF No. 1 and 5). Elevance is a health company and its portfolio of businesses operates throughout the United States. (Id.). Accordingly, Defendant is engaged in interstate commerce within meaning of the FAA. *See Cartrade, Inc. v. Ford Dealers Advertising Assoc.*, 446 F.2d 289, 292 (9th Cir. 1971).

## 2. <u>The Arbitration Agreement Encompasses All of Plaintiff's Claims Against Defendant Including Dispositive Motion Brought By Defendant</u>

In determining whether to compel arbitration under the FAA, the inquiry is limited to two gateway issues: (1) whether there is a valid agreement to arbitrate; and (2) whether the agreement covers the dispute. If such an agreement exists, there is "no place for the exercise of discretion," and the court must "direct the parties to proceed in arbitration." *Dean Witter Reynolds, Inc.* v. *Byrd,* 470 U.S. 213, 218 (1985). Because arbitration is a creation of contract, a court may compel arbitration only when there is a "clear agreement" to arbitrate between the parties. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092-93 (9th Cir. 2014) (citations omitted). "When determining whether a valid contract

to arbitrate exists, we apply ordinary state law principles that govern contract formation." *Id.* at 1093 (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002)).

Here, there is no question of whether a valid agreement exists. Indisputably, Plaintiff and Defendant are in agreement that there is a valid Arbitration Agreement between the parties. Having established the existence of an agreement to arbitrate, the Court must evaluate the scope of the Agreement to ascertain whether it encompasses each of Plaintiff's claims. *See Rebolledo v. Tilly's, Inc.*, 228 Cal. App. 4th 900, 905 (2014). The parties' Arbitration Agreement is broad and encompasses all the causes of action alleged in Plaintiff's Complaint. (Karapetyan Decl. ¶¶ 2, 5, Exh. A). Since Plaintiff alleges causes of action stemming from alleged wrongful termination in violation of public policy, retaliation, discrimination, failure to prevent discrimination and retaliation, and failure to provide reasonable accommodation and engage in a good faith interactive process. These allegations indisputably relate to and arise out of Plaintiff's employment, his claims are within the scope covered by Arbitration Agreement.

## B. **California Law Also Requires Plaintiff to Arbitrate His Claims**

Even if the FAA did not apply here, California law incorporates the FAA's policy objectives, including the presumption in favor of arbitrability. *See, e.g., Elijahjuan v. Superior Ct.*, 210 Cal. App. 4th 15, 20 (2012); *Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal. 4th 495, 501-02 (2005). Under California law, "[a] petition to compel arbitration based on a written arbitration agreement must be granted unless grounds exist to revoke the agreement." *Roman v. Superior Ct.*, 172 Cal. App. 4th 1462, 1468 (2009) (citing Cal. Civ. Proc. Code §§ 1281, 1281.2). Code of Civil Procedure section 1281.2 mandates that a court "shall" grant a petition to compel arbitration, unless it finds that: (1) no written agreement to arbitrate exists; (2) the right to compel arbitration has been waived; (3) grounds exist for revocation of the agreement; or (4) litigation is pending that may render the arbitration unnecessary or create conflicting rulings on common issues. None of these exceptions apply here, and the parties to this action have agreed that there

-8-

is in fact a valid and enforceable arbitration agreement, thus Plaintiff finds arbitration should be compelled. This Court also should uphold the parties' Agreement in light of California's strong policy of enforcing employment arbitration agreements. Plaintiff has carried his burden to compel arbitration under the FAA and/or California law.

## IV.    DEFENDANT'S MOTION TO DISMISS IS MOOT

Defendant's Motion to Dismiss is set for a hearing before this court on January 16, 2026. The parties to this action are indisputably bound by a valid and enforceable Arbitration Agreement, which covers all of Plaintiff's claims. Indeed, Defendant does not dispute the existence or enforceability of the Arbitration Agreement, but instead seeks to have the Court decide on Defendant's Motion to Dismiss first, to avoid arbitration costs. This is improper. Under the Federal Arbitration Act, the purpose of arbitration agreements is to ensure that disputes subject to arbitration are resolved in the forum agreed upon by the parties, without unnecessary delay or judicial intrusion. Allowing Defendant to bypass arbitration in order to test the merits in court undermines the very purpose of the FAA and the parties' contractual agreement.

*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999)( observing that the "standard for demonstrating arbitrability is not high. .... [so that] district courts [must] direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed"). *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019)("Under the [Federal Arbitration] Act and this Court's cases, the question of who decides arbitrability is itself a question of contract. The Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes"). Here, not only does the Arbitration Agreement encompass all of the Plaintiff's claims in this case which renders Defendant's Motion to Dismiss moot, but it also explicitly provides that "[t]he Arbitrator shall have the authority to rule on a motion to dismiss and/or a motion for summary judgment by any party." The parties to this action are bound by the terms of the Arbitration Agreement they entered into, which clearly grants the arbitrator this

-9-

1 power and confirms that the issues raised in Defendant's Motion to Dismiss fall within

2 the scope of arbitration.

3 **V.    THIS COURT SHOULD IMMEDIATELY STAY THE ACTION**

4 **PENDING ARBITRATION**

5      Under Section 3 of the FAA, a court, "upon being satisfied that the issue

6 involved ... is referable to arbitration, shall on application of one of the parties stay the

7 trial of the action until such arbitration has been had in accordance with the terms of the

8 agreement." 9 U.S.C.A. § 3. Section 3, however, is not mandatory; the court also "has

9 discretion to dismiss under Rule 12(b)(6) if it finds that all of the claims before it are

10 arbitrable." *Salberg v. Massage Green Int'l Franchise Corp.*, No. 3:15-CV-02805-

11 GPC-WVG, 2016 WL 3667154, at *2 (S.D. Cal. July 11, 2016) (citing *Sparling v.*

12 *Hoffman Constr. Co.*, 864 F.2d at 638); *Villa v Gruma Corp.*, No. 1:19-CV-01721-

13 DAD-BAM, 2020 WL 433098, at *2 (E.D. Cal. Jan. 28, 2020); *Thinket Ink Info. Res.,*

14 *Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004) (holding that the

15 district court properly exercised its discretion in dismissing an action where all claims

16 were subject to arbitration under FAA). Accordingly, if the Court orders Plaintiff to

17 submit his claims to arbitration, this Court should stay the action in its entirety as all

18 claims asserted are subject to, and covered by, the Arbitration Agreement.

19 **VI.    CONCLUSION**

20      For the reasons above, Plaintiff respectfully requests this Court (1) grant

21 Plaintiff's Motion to Compel Arbitration, (2) stay the action pending arbitration, and

22 (3) render Defendant's Motion to Dismiss as moot.

23 DATED: December 24, 2025          **LAW OFFICES OF RAMIN R. YOUNESSI,**
**A PROFESSIONAL LAW CORPORATION**

25                          **BY:**  */s/ Diana Karapetyan*
                               RAMIN R. YOUNESSI, ESQ.
26                             HEATHER N. PHILLIPS, ESQ.
                               SAMANTHA L. ORTIZ, ESQ.
27                             DIANA KARAPETYAN, ESQ.
                               Attorneys for Plaintiff,
28                             HECTOR JR GONZALEZ

-10-

1

## <u>CERTIFICATE OF SERVICE</u>

2

3   I hereby certify that a true and correct copy described as **NOTICE OF MOTION AND MOTION OF PLAINTIFF TO COMPEL ARBITRATION AND STAY ACTION** was on December 24, 2025, served upon all counsel of record electronically by the Court's Case Management System:

4

5   Thy B. Bui (SBN 256383)                        *Attorneys for Defendant,*
6   tbui@maynardnexsen.com                         *THE ELEVANCE HEALTH*
    Aaron M. Rutschman (SBN 288273)                *COMPANIES, INC.*
7   arutschman@maynardnexsen.com
    Romina Tamiry (SBN 328420)
8   rtamiry@maynardnexsen.com
    MAYNARD NEXSEN LLP
9   10100 Santa Monica Blvd. Suite 550
    Los Angeles, CA 90067
10  Telephone: 310.596.4500

11

12

13

14

15  ☒    <u>BY NOTICE OF ELECTRONIC FILING:</u> The above-listed counsel have consented to electronic service and have been automatically served by the Notice of Electronic Filing automatically generated by CM/ECF at the time said document was filed and which constitutes service pursuant to FRCP 5(b)(2)(D).

16

17       Executed on December 24, 2025, at Los Angeles, California.

18                                                          By: /s/Elizabeth Pineda

19

20

21

22

23

24

25

26

27

28

---

NOTICE OF MOTION AND MOTION OF PLAINTIFF TO COMPEL ARBITRATION AND STAY THIS ACTION